UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDWARD KREINIK,

                         Plaintiff,

        -v-

SHOWBRAN PHOTO, INC. *et al.*,

                         Defendants.

Case No. 02-CV-1172 (KMK)

<u>BENCH OPINION</u>

<u>Appearances</u>:

Anne L. Clark, Esq.
Rebecca J. Osborne, Esq.
Vladeck, Waldman, Elias & Engelhard, P.C.
New York, N.Y.
*Counsel for Plaintiff*

James M. Felix, Esq.
Kilhenny & Felix
New York, N.Y.
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Plaintiff Edward Kreinik brings this action to collect compensation and benefits allegedly

due from his former employer, Defendant Showbran Photo, Inc. ("Showbran"), and related

entities:  Defendants Showbran Photo, Inc. Atlantis Health Plan ("Health Plan"); Showbran, Inc.;

and Showbran, Inc. 401(K) Plan.  Kreinik asserts claims under the Employee Retirement Income

Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, Article 6 of the New York Labor Law, N.Y.

Lab. Law § 190 *et seq.*, and New York State common law.  In October 2004, the parties tried the

state-law claims to a jury, which returned a verdict finding that Kreinik was entitled to relief

only on his *quantum meruit* common-law claim.  On January 26, 2005, the Court heard

additional testimony on the ERISA claims,[1] and directed the parties to submit additional materials and briefing. The parties have done so, and the ERISA claims are fully submitted for the Court's review. As required by Rule 52(a) of the Federal Rules of Civil Procedure, the Court sets forth its findings of fact and conclusions of law below. *See* Fed. R. Civ. P. 52(a) ("In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon . . . ."); *see also Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 124 (2d Cir. 2003) ("[T]he District Court has an obligation to make explicit findings of fact and conclusions of law explaining the reasons for its decision.").

The Court is confronted with the question of what effect, if any, should be given to the jury's earlier finding that Kreinik was not an employee during the time he worked for Showbran, but an independent contractor. Kreinik can only recover under ERISA if he was Showbran's employee and therefore, his ERISA claims would fail if the Court gave preclusive effect to the jury's finding. Because the Court finds that both ERISA and Article 6 of the New York Labor Law apply the same common-law standards for resolving the employee/independent contractor issue, and because those standards were incorporated into the Court's instructions to the jury, the Court is bound to follow the jury's earlier decision. Accordingly, the Court dismisses Kreinik's ERISA claims and enters judgment for Defendants.

---

[1] The parties concur that they do not have a right to a jury trial on the ERISA claims, which are equitable in nature. *See Sullivan v. LTV Aerospace and Def. Co.*, 82 F.3d 1251, 1258-59 (2d Cir. 1996) ("[T]here is no right to a jury trial in a suit brought to recover ERISA benefits.").

## I.  Procedural Background

Kreinik filed this case on February 13, 2002.[2]  Kreinik asserts that he began working at Showbran as a sales representative with the title Director of Sales and Marketing in May 1995, and that his primary responsibility throughout the time he worked there was to sell Showbran's services (which involved photographic and copying services) to customers in the fashion industry.  The relationship between Kreinik and Showbran's managers apparently soured over time, and Kreinik was terminated in September 2001.  Kreinik asserts two categories of claims in the First Amended Complaint—those arising under ERISA and those arising under New York State statutory and common law.

In support of his ERISA claims, Kreinik contends that he was Showbran's employee throughout the time he worked there.  He alleges that Showbran denied him health benefits which were offered to other Showbran employees by requiring him to pay for the share of the monthly premiums that Showbran paid on behalf of its other employees.  He seeks to recover the amounts he allegedly overpaid for health benefits.  He also contends that Showbran failed to provide him with copies of plan documents when he asked for them in October 2001, and that he is entitled to statutory damages under ERISA for each day that Showbran failed to provide him with the documents.  Showbran denies that Kreinik is entitled to any relief on the ERISA claims.

In support of his claims under New York State statutory and common law, Kreinik alleged that Showbran did not pay or fully pay commissions to which he was entitled.  Kreinik sought relief under New York Labor Law as an employee, or, in the alternative, under New York

[2]He subsequently submitted a First Amended Complaint on June 17, 2002 and a Second Amended Complaint on October 16, 2003, but ultimately withdrew the latter.  (Order, Nov. 26, 2003)  Thus, the operative pleading is Kreinik's First Amended Complaint.

Labor Law and common law as an independent contractor.  He also asserted claims to be paid for work done in preparing for and conducting employee training seminars and conferences. Showbran denied these claims and also asserted that it was entitled to a setoff for instances where Kreinik allegedly overdrew commissions from Showbran.

The state-law claims were tried before a jury starting on October 18, 2004, and on October 22, 2004 the jury returned a verdict finding Kreinik entitled to relief on only one of his claims.  (Civil Verdict Form, Oct. 22, 2004 ("Verdict Form"))  Specifically, the jury found that Kreinik was not an employee of Showbran (Verdict Form # 1), a finding which doomed all of Kreinik's employee claims.  The jury also found that Kreinik was not entitled to recover under any of his independent-contractor claims.  (Verdict Form # 6-11)  However, the jury did find that Kreinik was entitled to recover on his *quantum meruit* claim for work done in connection with employee training seminars and conferences.  (Verdict Form # 12)  The jury awarded Kreinik $19,000 for this claim (Verdict Form # 20), but found that Showbran was entitled to offset that sum by $6,038.33, which is the amount the jury found Kreinik to have received from Showbran in overdrawn commissions.  (Verdict Form # 21)  At the request of the parties, the Court ordered that entry of judgment on the verdict be stayed until Kreinik's ERISA claims were decided by the Court.  (Order, Nov. 15, 2004)

The Court heard further testimony on the ERISA claims on January 26, 2005.  Prior to the hearing, the parties had submitted proposed findings of fact and conclusions of law.  The Court set a briefing schedule for the parties' final submissions regarding the ERISA claims and Kreinik submitted a letter brief in support of his ERISA claims on February 4, 2005, to which Defendants responded on February 14, 2005.  Kreinik replied on February 22, 2005.  The parties

have rested and the ERISA claims are fully submitted to the Court.

## II.  Summary of the ERISA Claims and the Parties' Contentions

As noted above, Kreinik asserts two claims under ERISA.  First, he asserts under 29
U.S.C. § 1132(a)(1)(B)—ERISA's civil enforcement provision—that Showbran denied him
benefits under its employee welfare and benefit plan by requiring him to pay the full cost of
health insurance from November 1998 until the time his work with Showbran ended in
September 2001.  Kreinik contends that he was an employee of Showbran throughout the time he
worked there and that he was entitled to participate in the employee benefit plans that Showbran
maintained for its employees, and it is undisputed that he did receive health insurance under the
Health Plan that Showbran maintained for its employees.  He asserts that Showbran paid a
certain portion of the health insurance premiums of its other employees, but that starting in
November 1998, Showbran required Kreinik to pay the full amount of the premiums, including
the portion that Showbran paid on behalf of its other employees.  Kreinik asserts that he paid
$6,365 in premiums that should have been paid by Showbran and therefore is entitled to this
amount.

Showbran responds by arguing that Kreinik was an independent contractor, not an
employee, and therefore is not entitled to participate in Showbran's employee benefit plans or
assert any claims for benefits under ERISA.  Showbran contends that Kreinik himself requested
independent-contractor status prior to working for Showbran and that his tax reporting, method
of compensation, and work responsibilities and conditions are all consistent with being an
independent contractor.  Showbran also contends that even if the Court were to find that Kreinik
was an employee who was entitled to participate in Showbran's benefit plans, Kreinik has

5

adduced no credible evidence that he made full premium payments prior to April 1999, and that therefore his damages are $5,728.30, not $6,365.

Kreinik's second ERISA claim is that he is entitled to statutory damages of up to $100 per day under 29 U.S.C. §§ 1024(b)(4) and 1132(c)(1)(B) for Showbran's failure to provide him with documents related to its employee benefit plans. Kreinik alleges that his counsel hand-delivered a letter to Showbran's president, Shoshanna Vinderboim, on October 12, 2001 stating his claims and requesting copies of all plan documents. Showbran did not comply with his request for plan documents until April 3, 2002. Kreinik contends that the documents were needed so that he could determine whether he had a claim for benefits under Showbran's employee benefit plans. He seeks $14,300 for Showbran's allegedly willful failure to provide these documents.

Showbran counters again that Kreinik was an independent contractor and not an employee, and therefore not entitled to the plan documents. Showbran further contends that even if the Court were to find that Kreinik was entitled to the plan documents, the Court ought to exercise its discretion to reduce or eliminate the statutory penalty because Showbran's delay in producing the plan documents was not intentional or done in bad faith, and that Vinderboim showed Kreinik's request to her counsel at that time and was not advised that she should produce the plan documents. Showbran then asserts that statutory damages are not appropriate because Kreinik was not prejudiced by the delay in the production of the plan documents. Finally, Showbran argues that it had already provided the plan documents to Kreinik in or around August 2001.

Kreinik replies that he need not show prejudice from Showbran's delay in producing the

documents to recover statutory damages, but that he, in fact, was prejudiced because he was forced to initiate the instant lawsuit without having the benefit of reviewing the plan documents. Kreinik asserts that even after the plan documents were produced, they were missing certain information, such as the identity of the plan administrator, which required further discovery. Moreover, Kreinik disputes Showbran's advice-of-counsel defense because he contends that the evidence shows that Vinderboim never asked counsel whether she ought to comply with the request or that counsel advised her specifically with respect to her ERISA obligations. Lastly, Kreinik avers that, contrary to Showbran's assertion that he received the plan documents in August 2001, he never received the plan documents until April 2002.

### III.  Findings of Fact and Conclusions of Law

As indicated by the parties' submissions, the threshold issue for the Court to decide is whether Kreinik was Showbran's employee under ERISA.  For the reasons stated below, the Court finds that it must follow the jury's earlier finding that Kreinik was not an employee, and therefore Kreinik's ERISA claims fail.

Section 1132(a)(1)(B), the provision under which Kreinik brings his claim for benefits, and Sections 1024(b)(4) and 1132(c)(1)(B), the provisions under which Kreinik brings his statutory damages claim for Showbran's failure to produce plan documents, provide rights and remedies only to *participants* and *beneficiaries*.  *See* 29 U.S.C. §§ 1024(b)(4), 1132(a)(1)(B), (c)(1)(B).  Kreinik has not asked the Court to find that he is a "beneficiary" under these provisions, and in any case, the Court finds that he is not a beneficiary.[3]  Thus, the Court must

---

[3]The ERISA statute defines "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan."  29 U.S.C. § 1002(8).  Kreinik has not asked the Court to find that he is a beneficiary of Showbran's employee benefit plans within the meaning of

determine if Kreinik is a "participant" in an ERISA plan, an inquiry which involves determining

whether Kreinik was Showbran's employee, as provided in ERISA's definition of "participant":

> any *employee* or *former employee* of an employer . . . who is or may become
> eligible to receive a benefit of any type from an employee benefit plan which
> covers employees of such employer or members of such organization, or whose
> beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7) (emphasis added); *see also Nationwide Mut. Ins. Co. v. Darden*, 503 U.S.

318, 320-21 (1992) ("[Plaintiff's] ERISA claim can succeed only if he was [defendant's]

'employee' . . . ."); *Baraschi v. Silverwear, Inc.*, No. 01 Civ. 11263, 2002 WL 31867730, at *3

(S.D.N.Y. Dec. 23, 2002) (finding that being an employee is one of the requirements to qualify

as a "participant" under ERISA); *Admin. Comm. of the Time Warner, Inc. Benefit Plans v.

Biscardi*, No. 99 Civ. 12270, 2000 WL 1721168, at *8 (S.D.N.Y. Nov. 17, 2000) ("To be

eligible for benefits under ERISA, a claimant must be a 'participant' in an ERISA benefit plan.

ERISA defines 'participant' as 'any employee or former employee of an employer . . . .'").[4]

---

§ 1002(8), and has instead requested that the Court find that he "is a *participant* in the Showbran
Photo, Inc. Atlantis Health Plan, within the meaning of 29 U.S.C. § 1002(7) . . . ."  (Pl.'s
Proposed Findings of Fact and Conclusions of Law ¶ 4 (emphasis added))  Moreover, the Court
finds that the Health Plan documents do not have any provisions which designate Kreinik as a
beneficiary.  (Trial Ex. 52)

[4]For his claims related to Showbran's failure to turn over plan documents under 29
U.S.C. §§ 1024(b)(4) and 1132(c)(1)(B), Kreinik contends that "even if the Court does not find
that Kreinik was an employee, it may nonetheless rule" in his favor on that claim.  (Letter from
Clark to the Court 7 n.4, Feb. 4, 2005)  Kreinik contends that the Supreme Court held that a
claimant may be a "participant" if that person presents "a colorable claim that (1) he or she will
prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future."
*Id*. (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 116-18 (1985)).

Kreinik's argument is incorrect, as a more complete reading of *Firestone* reveals.  In
*Firestone*, the Supreme Court largely adopted the Second Circuit's definition of "participant" in
*Saladino v. I.L.G.W.U. Nat'l Ret. Fund*, 754 F.2d 473, 476 (2d Cir. 1985).  The Supreme Court
stated:

The jury in this case already found that Kreinik was not an employee for purposes of Kreinik's state law claims, and therefore the Court faces the question of determining what effect, if any, the jury's finding has on the ERISA claims. While this question was not raised by the parties, the Court directed them to address it in their submissions after the January 26, 2005 hearing.

Kreinik contends that the Court is not bound by the jury's finding that he is not an employee because New York Labor Law and ERISA have different standards for determining whether a worker is an employee. To support this contention, Kreinik relies on cases which hold that a prior finding on a fact issue does not preclude litigation on a similar issue if the two issues involve legal standards that are "significantly different."[5] Kreinik maintains that the two

---

    In our view, the term "participant" is naturally read to mean either "*employees* in, or reasonably expected to be in, currently covered employment," . . . or *former employees* who "have . . . a reasonable expectation of returning to covered employment" or who have "a colorable claim" to vested benefits . . . . In order to establish that he or she "may become eligible" for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future. "This view attributes conventional meanings to the statutory language since all *employees* in covered employment and *former employees* with a colorable claim to vested benefits 'may become eligible.' A *former employee* who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, however, simply does not fit within the [phrase] 'may become eligible.'"

*Firestone*, 489 U.S. 117-18 (citations omitted and emphasis added). As should be clear from the quoted excerpt above, placed in its proper context, the statement on which Kreinik relies for his argument clearly refers only to "colorable claims" that may be asserted by claimants who *were* former employees, not claimants who were *never* employees. Thus, prior to deciding whether a claimant has a "colorable claim," the Court must decide whether the claimant was an employee, and if the Court finds that Kreinik was not an employee, it may not determine whether he has a "colorable claim."

    [5]For example, in *Metromedia Co. v. Fugazy*, 983 F.2d 350, 365 (2d Cir. 1992), one of the cases cited by Kreinik, the Second Circuit considered whether one of the defendants was

standards are not identical because, among other reasons, the ERISA standard emphasizes the extent to which the hiring party has the right to control the manner and means by which the worker completes the work, but the Court's instructions to the jury on New York Labor Law do not emphasize the hiring party's right to control the work. (Letter from Clark to the Court 2, Feb. 4, 2005)

In their response, Defendants apparently accept Kreinik's position that the jury's finding is not binding. Defendants state that "counsel for plaintiff has in fact taken care of issues raised by the Court," and "our own research did not uncover a case which holds that a finding by a jury on a New York Labor Law claim is binding upon a finder of fact in a claim involving ERISA. Thus, that issue, subject to the Court's own interpretation, appears to have been answered by

---

collaterally estopped from asserting that he had not committed bankruptcy fraud by a bankruptcy court decision that found he had fraudulently transferred bankruptcy assets. The Second Circuit articulated the general standard for issue preclusion, stating that the doctrine of issue preclusion (also called collateral estoppel) prohibits relitigation of an issue decided in a prior proceeding when "the issue to which preclusion is sought . . . [is] identical to the issue decided in the prior proceeding." *Metromedia*, 983 F.2d at 365. The court also stated that "[i]ssues of fact may bear the same label without being identical. They are not identical if the legal standards governing their resolution are significantly different." *Id.*

Another case Kreinik cites is *Jim Beam Brands Co. v. Beamish & Crawford Ltd.*, 937 F.2d 729 (2d Cir. 1991), in which the Second Circuit addressed the issue of whether a defendant in a Lanham Act trademark-infringement action is precluded from litigating the issue of likelihood of confusion when the Federal Circuit had previously decided that there was a likelihood of confusion in a trademark-cancellation proceeding. The Second Circuit held that it did not, finding that "the issue of likelihood of confusion in a cancellation proceeding may be different from the issue of likelihood of confusion in an action for infringement" because "the factual frame of reference used by the adjudicating body is different." *Jim Beam*, 937 F.2d at 734. In a trademark-cancellation proceeding, the court found that likelihood of confusion "'is determined only as to the registrability of the applicant's mark exactly as shown in the application and only as to the goods listed, regardless of actual usage.'" *Id.* (quotation omitted). By contrast, in an infringement action, "a court must examine the visual appearance of each mark *in the context of its use*." *Id.* at 735 (emphasis added).

plaintiff."  (Letter from Felix to the Court 1, Feb. 14, 2005)

Regardless of Defendants' summary concession, Plaintiff's interpretation of the law is off the mark.  Although the Court is not aware of any case that expressly deals with this issue, the Court is aware of cases that teach that "when the jury has decided a factual issue, its determination has the effect of precluding the court from deciding the same fact issue in a different way."  *Wade v. Orange County Sheriff's Office*, 844 F.2d 951, 954 (2d Cir. 1988) (citations omitted), *superseded by statute on other grounds*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071, *as recognized in Natale v. Mount Sinai Med. Ctr.*, No. 90 Civ. 8144, 1993 WL 228877, at *1 (S.D.N.Y. June 23, 1993); *see also Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1048 (2d Cir. 1992) ("'[W]hen legal and equitable actions are tried together, the right to a jury in the legal action encompasses the issues common to both.'") (quoting *Lincoln v. Bd. of Regents of the Univ. Sys. of Ga.*, 697 F.2d 928, 934 (11th Cir. 1983)).  A court is bound to follow an earlier jury finding when the claim submitted to the jury involves the same "essential elements" as the claim before the court.  *Song*, 957 F.2d at 1048.

The cases discussing the rule provide several justifications for its existence.  One is to protect the parties' Seventh Amendment right to a jury trial.  *See* U.S. Const. amend. VII ("[T]he right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law."); *Wade*, 844 F.2d at 954 ("To safeguard [the Seventh Amendment] right, the general rule is that the jury must decide the legal claims prior to the court's determination of the equitable claims . . . in order to prevent the court's determination of a common factual issue from precluding, by collateral estoppel effect, a contrary determination by the jury.") (citations omitted).  Another is that a

jury's verdict invokes the doctrines of *res judicata* and collateral estoppel "with respect to the factual issues which would have necessitated jury resolution." *In re Lewis*, 845 F.2d 624, 629 (6th Cir. 1988). Finally, a third is the furtherance of the Court's "responsibility to preserve the integrity of the judicial process," which involves "a substantial concern in the consistent determination of any particular question." *Wade*, 844 F.2d at 954.

Because the jury's earlier verdict invokes the doctrine of collateral estoppel with respect to issues decided by the jury, *see Wade*, 844 F.2d at 954, the Court applies collateral estoppel principles to this case. The only element of the doctrine of collateral estoppel which the Court must consider at length, as noted by Kreinik, is whether "the issue as to which preclusion is sought" is "identical to the issue decided in the prior proceeding." *Metromedia*, 983 F.2d at 365. The Court notes that none of the other traditional elements of the collateral estoppel doctrine is in dispute, namely, that "the issues were actually litigated and decided," that "the estopped party had a full and fair opportunity to litigate the issues," and that the "resolution of the issues was necessary to the final judgment." *Medinol Ltd. v. Guidant Corp.*, 341 F. Supp. 2d 301, 314 (S.D.N.Y. 2004) (citing *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995)); *see also* Restatement (Second) of Judgments § 27 (1982) (stating that a determination of an issue is preclusive on later litigation "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment").

The employee/independent contractor issue was actually decided by the jury, and the jury specifically found that Kreinik was not an employee. (Verdict Form # 1) The parties also had a full and fair opportunity to litigate the issue during the October 2004 jury trial, and no new

evidence was offered on the employee/independent contractor issue at the January 26, 2005 bench hearing or in the parties' post-hearing submissions that the parties were not aware of and did not have an opportunity to submit to the jury. Finally, the resolution of the issue was necessary for Kreinik's New York State law claims, as it determined which provision of the New York Labor Law statute—and thus, what relief—was available to Kreinik.

As to the identity-of-the-issues element, the Court is aware that although certain issues "may bear the same label," they "are nonetheless not identical if the standards governing them are significantly different." *Jim Beam*, 937 F.2d at 734. But the identity element does not require that the issues be *exactly* identical, and courts instead have held that two issues may be identical for estoppel purposes if they are *substantially* or *essentially* the same. *See ITT Corp. v. United States*, 963 F.2d 561, 564 (2d Cir. 1992) (in a tax case, a court applying the doctrine of collateral estoppel "must determine first whether the issues presented in [an earlier action] are substantially the same as those presented by this action"); *Aries Realty, Inc. v. AGS Columbia Assocs.*, 751 F. Supp. 444, 450 (S.D.N.Y. 1990) (plaintiff precluded from relitigating a claim where "the elements of the securities claims [were] essentially the same as those of the fraud claims in the prior litigation"); *see also Raytech Corp. v. White*, 54 F.3d 187, 191 (3d Cir. 1995) ("To defeat a finding of identity of the issues for preclusion purposes, the difference in the applicable legal standards must be 'substantial.'"); 18 *James Wm. Moore et al.,* § 132.02(2)(j)(i) (3d ed. 1997) ("No two issues are ever completely identical in every procedural, factual, and legal respect . . . . [T]he question will be whether a legal question that arises in cases involving different claims or causes of action is substantially the same, given the governing law.").

As the jury had earlier found that Kreinik was not an employee under New York law, the

Court's task is to now determine whether the standards for deciding the employee/independent contractor issue under New York law (as set forth in the Court's instructions to the jury) and ERISA are substantially the same so that the jury's finding will preclude the Court from reaching a different result for the ERISA claims. The Court finds that New York and ERISA both use the same common-law test to determine whether a worker is an employee, and that common-law test was incorporated in the Court's instructions to the jury.

The Court begins by reviewing the ERISA standard for determining the employee/independent contractor issue.[6] The ERISA statute defines employee as "any individual employed by an employer." 29 U.S.C. § 1002(6). The Supreme Court, in interpreting this "completely circular" definition, adopted "a common-law test for determining who qualifies as an 'employee' under ERISA . . . ." *Darden*, 503 U.S. at 323. In so doing, the Court applied

---

[6]The case law is somewhat divided about the context in which the employee/independent contractor issue should be considered, *i.e.*, whether it should be considered as part of a review of the ERISA plan administrator's or fiduciary's denial of benefits, or whether it should be reviewed independently, as a statutory requirement for relief. For example, Chief Judge Mukasey, in considering a motion to dismiss, simply discussed whether the plaintiff had sufficiently alleged that she was an employee in the defendant's ERISA plan. *See Baraschi*, 2002 WL 31867730, at *3. On the other hand, Judge Cote considered the question, on a summary judgment motion, of whether an ERISA fiduciary's finding that claimants were not employees was arbitrary and capricious. *Admin. Comm. of the Time Warner, Inc. Benefit Plans v. Biscardi*, No. 99 Civ. 12270, 2000 WL 1721168, at *8-9 (S.D.N.Y. Nov. 17, 2000).

The Court need not resolve this question. Even if this Court was bound to consider the employee/independent contractor issue as a review of an administrator's denial of benefits, the Court here would review that decision *de novo*. Courts review the decisions of ERISA fiduciaries or administrators under a *de novo* standard of review unless the terms of the ERISA plan give the fiduciaries or administrators discretion to determine eligibility for benefits and the fiduciaries or administrators have not acted out of a conflict of interest. *Biscardi*, 2000 WL 1721168, at *5-6. The Court finds that Showbran's plan documents do not provide any discretion in determining eligibility for benefits. (Trial Ex. 52) In addition, the Court notes that Showbran, which the parties agree was the plan administrator (Stipulation of Facts Concerning ERISA Claims ¶ 6), may have a conflict of interest in denying benefits to Kreinik.

the "well established" principle that:

> where Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms . . . .  In the past, when Congress has used the term "employee" without defining it, we have concluded that Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine.

*Id*. at 322-23 (quoting *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739-40 (1989)).

The common-law test adopted by the Supreme Court for ERISA, which has also been applied in other contexts,[7] places the greatest emphasis on the degree to which the hiring party has a right to control the manner and means by which the hired party completes the work.  *Id*. at 323  ("'In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished.'") (quoting *Reid*, 490 U.S. at 751-52); *see also* Restatement (Second) of Agency § 220(1) (1958) ("A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.").  The Court also listed the following as "[a]mong the other factors" that it deemed "relevant to this inquiry," including:

- the skill required;

- the source of the instrumentalities and tools;

---

[7] *See*, *e.g.*, *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 113-14 (2d Cir. 2000) (applying common-law test to Title VII case); *Hilton Int'l Co. v. NLRB*, 690 F.2d 318, 320 (2d Cir. 1982) (applying common-law test to National Labor Relations Board Act case); *but see McGuiggan v. CPC Int'l, Inc.*, 84 F. Supp. 2d 470, 478 (S.D.N.Y. 2000) (applying "economic reality" test to a Fair Labor Standards Act ("FLSA") claim, because FLSA provides a more expansive definition of the verb "employ" than other federal statutes) (citing *Darden*, 503 U.S. at 326).

- the location of the work;

- the duration of the relationship between the parties;

- whether the hiring party has the right to assign additional projects to the hired party;

- the extent of the hired party's discretion over when and how long to work;

- the method of payment;

- the hired party's role in hiring and paying assistants;

- whether the work is part of the regular business of the hiring party;

- whether the hiring party is in business;

- the provision of employee benefits; and

- the tax treatment of the hired party.

*Id.* at 323-24 (bullet points added) (quoting *Reid*, 490 U.S. at 751-52 (footnotes omitted)). The Court further stated "[s]ince the common-law test contains 'no shorthand formula or magic phrase that can be applied to find the answer, . . . all of the incidents of the relationship must be assessed and weighed with no one factor being decisive.'" *Id.* at 324 (quoting *NLRB v. United Ins. Co. of Am.*, 390 U.S. 254, 258 (1968)). Indeed, the Court cited additional sources that provide nonexhaustive lists of additional factors that may be considered, including Section 220(2) of the Restatement (Second) of Agency (which lists "nonexhaustive criteria") and a ruling from the Internal Revenue Service, Rev. Rul. 87-41, 1987-1 C.B. 296 (which lists 20 factors). *See id.*

Courts applying the common-law test in this Circuit emphasize that the control factor is the central consideration in determining whether an employer/employee relationship exists. *See*, *e.g.*, *Eisenberg*, 237 F.3d at 112 (in a Title VII sexual harassment case, "the 'greatest emphasis'

should be placed on the first factor—that is, the extent to which the hiring party controls the 'manner and means' by which the worker completes his or her assigned tasks"); *Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018, 1033-34 (2d Cir. 1997) (stating that the right of control is the "crucial determinant" under the common-law test); *Biscardi*, 2000 WL 1721168, at *10 (stating that "the hiring party's right to control the manner and means by which the product is accomplished" is the "central consideration" under the common-law test articulated in *Darden*).

As for the other factors in the common-law test, the Court has the authority to disregard any factors which, "in light of the facts of a particular case, are (1) irrelevant or (2) of 'indeterminate' weight—that is, those factors that are essentially in equipose and thus do not meaningfully cut in favor of either the conclusion that the worker is an employee or the conclusion that he or she is an independent contractor." *Eisenberg*, 237 F.3d at 114. "Not all of the *Reid* factors will be significant in every case, and we must weigh in the balance only those factors that are actually indicative of agency in the particular circumstances before us." *Langman Fabrics v. Graff Californiawear, Inc.*, 160 F.3d 106, 110-11 (2d Cir. 1998).[8]

New York courts apply the same common-law right-to-control test to determine whether a worker is an employee in several contexts. *See Eisenberg*, 237 F.3d at 113 (holding that "[f]or the purposes of [Title VII and the New York Human Rights Law], a decision on whether a worker is an 'employee'—or whether he or she is merely an independent contractor—requires

---

[8]The Court is aware that in *Langman* and in other cases involving intellectual-property claims, *see*, *e.g.*, *Aymes v. Bonelli*, 980 F.2d 857, 861 (2d Cir. 1992), courts have noted that certain factors are entitled to greater weight than others. *Langman*, 160 F.3d at 111 (listing five factors from the *Darden* test that deserve special consideration in Copyright Act cases). The Second Circuit, however, has noted that this special weight is only given in Copyright Act cases. *Eisenberg*, 237 F.3d at 116 ("However, we have never applied this weighing of the *Reid* factors outside of the copyright context, and we decline to do so here . . . .").

the application of the common law of agency"); *Chaiken*, 119 F.3d at 1033-34 (finding that both New York and federal National Labor Relations Act law focus on the common-law right-to-control test); *Smith v. CPC Int'l, Inc.*, 104 F. Supp. 2d 272, 275 (S.D.N.Y. 2000) ("[T]he common law test of agency discussed in *Darden* is the same test applied by New York courts in addressing a variety of employer-employee relationships."). In particular in *Smith*, Judge McMahon held that an earlier decision finding that plaintiffs were not employees under "traditional state law principles" precluded relitigation of the employee/independent contractor issue under ERISA. *Smith*, 104 F. Supp. 2d at 275.

Like the federal common-law test, the New York test focuses on the hiring party's right to control the manner and means by which the hired party completes the work. In a seminal case, the New York Court of Appeals stated that:

> [t]he distinction between an employee and an independent contractor has been said to be the difference between one who undertakes to achieve an agreed result and to accept the directions of his employer as to the manner in which the result shall be accomplished, and one who agrees to achieve a certain result but is not subject to the orders of the employer as to the means which are used.

*In re Morton*, 284 N.Y. 167, 172 (1940). The Court in *Morton* then undertook an examination of the facts in the case, with the understanding that "various aspects of the relationship may be considered in arriving at the conclusion in a particular case." *Id*. at 173.

In a more recent case, the New York Court of Appeals applied the common-law test to determine employment status under Article 6 of the New York Labor Law (the same Article under which Kreinik brought his Labor Law claims) and stated that "the critical inquiry in determining whether an employment relationship exists pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the

results." *Bynog v. Cipriani Group, Inc.*, 1 N.Y.3d 193, 198 (2003). The Court of Appeals listed

"[f]actors relevant to assessing control, includ[ing] whether the worker

      (1)     worked at his own convenience,

      (2)     was free to engage in other employment,

      (3)     received fringe benefits,

      (4)     was on the employer's payroll and

      (5)     was on a fixed schedule."

*Id.*[9]

Based on the parties' requests to charge and the applicable law, the Court gave the jury

the following instructions on the employee/independent contractor issue during October's trial:

> Mr. Kreinik asserts that he was Showbran's employee. Showbran asserts
> that Mr. Kreinik was not an employee but was an independent contractor. You
> must determine whether Mr. Kreinik has shown that he was an employee by a

---

[9]The Court is aware that at least one court has implicitly found that Article 6 of the New York Labor Law does not apply the common-law test to resolve the employee/independent contractor issue, but the "economic reality" test applied to FLSA cases. *See Gustafson v. Bell Atl. Corp.*, 171 F. Supp. 2d 311, 324 (S.D.N.Y. 2001). However, *Gustafson* pre-dates the New York Court of Appeal's decision in *Bynog*, where the court explicitly found that the common-law right-of-control test applies to Article 6 of the New York Labor Law. *See Bynog*, 1 N.Y.3d at 198. Moreover, in *Gustafson* the parties had apparently (and erroneously) agreed that the FLSA standard applied to Article 6 of the New York Labor Law. *Gustafson*, 171 F. Supp. 2d at 324 n.4. Following this, the Court looked to § 651(5) of the New York Labor Law (which is part of Article 19) and not § 190(2). *Id.* The latter definition governs Article 6 of the New York Labor Law (the provision at issue in this case), but it is not the same definition as set forth in Article 19. *Compare* N.Y. Lab. Law § 190(2) ("'Employee' means any person employed for hire by an employer in any employment.") *with* N.Y. Lab. Law § 651(5) ("'Employee' includes any individual employed or permitted to work by an employer in any occupation . . . ."). Thus, the assumption presented to the court in *Gustafson* was in error. Finally, as the Supreme Court notes in *Darden*, the "economic reality" test is not based on the definition of "employee" in FLSA, but on the definition of the verb "to employ" (as "suffer or permit to work"), *see Darden*, 503 U.S. at 325-26, which does not appear in the definition section of Article 6 of the New York Labor Law.

preponderance of the evidence.

An independent contractor is a person who is hired to provide a particular service or produce a particular result but is free to exercise his or her own skill and judgment as to the way the service is rendered and/or the result reached. An employee, by contrast, works under the instructions and orders of the employer as to the way he or she performs the work. Thus, the inquiry in deciding whether Mr. Kreinik was an employee or an independent contractor is the degree of control exercised by Showbran over the results produced or the means used to achieve the results.

You can use the following factors to guide your deliberations:

• Was Mr. Kreinik's work for Showbran part of his own business?

• Was Mr. Kreinik free to work for others or for himself?

• Was Mr. Kreinik free to work at his own convenience or was he required to work on a schedule set by Showbran?

• Was Mr. Kreinik responsible for his own work-related expenses, or was he reimbursed by Showbran?

• On what basis was Mr. Kreinik paid for the work? That is, was he paid regularly for his services or only by way of commission?

• Who, if anybody, made unemployment insurance payments and carried Workers Compensation insurance on Mr. Kreinik?

• Were deductions taken from amounts paid by Showbran to Mr. Kreinik for withholding taxes and social security?

• Who provided the instruments and materials and any additional workers required for Mr. Kreinik's work?

• Did Showbran provide office space to Mr. Kreinik and did Showbran require Kreinik to work in that space?

• Did Showbran provide Mr. Kreinik with business cards? If so, what did the business cards say?

• Did Showbran provide benefits to Mr. Kreinik?

You should not consider any one of these factors to be decisive, nor

should you consider the fact that the parties may have believed or have provided in a contract that Mr. Kreinik was an employee or an independent contractor to be conclusive of the issue. You must instead consider all the evidence as a whole.

(Jury Instructions 10-11, Oct. 21, 2004; *see also* Trial Tr. vol. 4, 681-82, Oct. 19, 2004)

At the charging conference, Defendants did not object to the instructions on the employee/independent contractor issue, but counsel for Kreinik objected and proposed two changes, which the Court adopted and incorporated into the instructions with Defendants' consent. (Trial Tr. 517-19) Kreinik had *no* other objections to these instructions.

As stated above, Kreinik contends that the doctrine of collateral estoppel does not apply. Kreinik's principal argument is that the ERISA test places the greatest emphasis on the degree of control the hiring party has over the manner and means by which the hired party completes the work, but the test the Court gave to the jury does not emphasize control. To support this argument, Kreinik relies on an excerpt from the Jury Instructions that states "[y]ou should not consider any one of these factors to be decisive, nor should you consider the fact that the parties may have believed or have provided in a contract that Mr. Kreinik was an employee or an independent contractor to be conclusive of the issue. You must instead consider all the evidence as a whole." (Letter from Clark to the Court 2-3, Feb. 4, 2005 (quoting Jury Instructions 11)).

This argument fails. Kreinik's selective review of the Jury Instructions omits the crucial section where the Court did, in fact, instruct the jury that their principal task was to determine the degree to which Showbran had a right to control Kreinik's work:

An independent contractor is a person who is hired to provide a particular service or produce a particular result but is free to exercise his or her own skill and judgment as to the way the service is rendered and/or the result reached. An employee, by contrast, works under the instructions and orders of the employer as to the way he or she performs the work. *Thus, the inquiry in deciding whether Mr. Kreinik was an employee or an independent contractor is the degree of*

> *control exercised by Showbran over the results produced or the means used to achieve the results.*

(Jury Instructions 10 (emphasis added))  The Court went on to list a number of factors to assist the jury with its deliberations (and instructed the jury not to consider any one of those factors to be dispositive but to consider the evidence as a whole) (Jury Instructions 11).  However, the Court's recitation of those factors and its instructions regarding the weight to be given to them *do not* negate what the Court had already clearly set out as the primary consideration, namely, to determine "the degree of control exercised by Showbran over the results produced or the means used to achieve the results."  (Jury Instructions 10)

Kreinik next argues that the Jury Instructions and the ERISA test are significantly different because some of the factors enumerated by the Supreme Court in *Darden* and in the Jury Instructions are different.  Specifically, Kreinik contends that the Jury Instructions contain two factors not expressly listed by the Supreme Court in *Darden*: (i) whether Kreinik was in business for himself and (ii) whether Kreinik was free to work for others besides Showbran. (Letter from Clark to the Court 3, Feb. 4, 2005)  *Darden*, however, does not purport to provide a complete list of factors.  *See Darden*, 503 U.S. at 323 ("*Among* the other factors relevant to this inquiry are . . . .") (emphasis added).  In fact, in adopting a common-law test for deciding the employee/independent contractor issue, the Supreme Court expressly referenced other authorities as providing additional factors that may be considered.  *Id*. at 324 (citing Restatement (Second) of Agency § 220(2) (1958); Rev. Rul. 87-41, 1987-1 C.B. 296).  These sources contain factors similar to the ones included in the Jury Instructions.  For example, the Restatement (Second) of Agency includes a factor that evaluates "whether or not the one employed is engaged in a distinct occupation or business."  Restatement (Second) of Agency § 220(2)(b) (1958).

Furthermore, the IRS ruling cited above includes factors that evaluate whether "a worker performs more than de minimis services for a multiple of unrelated persons or firms at the same time . . ." and whether "a worker makes his or her services available to the general public on a regular and consistent basis . . . ." Rev. Rul. 87-41, 1987-1 C.B. 296. Accordingly, the Court finds that ERISA's common-law test contemplates that the Court may consider whether Kreinik was in business for himself and whether he was free to work for others in determining whether he was an employee under ERISA, and that therefore the inclusion of these two factors in the Jury Instructions do not make them significantly different from the common-law test applied in ERISA cases.

Kreinik also contends that the Jury Instructions omit several factors that should be considered under the common-law test applied in ERISA cases, including (i) the skill required for Kreinik's position, (ii) the duration of the relationship between Kreinik and Showbran, (iii) whether Showbran had the right to assign additional projects to Kreinik, (iv) whether the work Kreinik performed was part of the regular business of Showbran, and (v) whether Showbran, as the hiring party, was in business.

The absence of these factors from the Jury Instructions does not make the Jury Instructions significantly different for several reasons. First, whatever factors are missing, the Jury Instructions do contain the essential part of the common-law test: the degree of control exercised by the hiring party over the hired party's work. (Jury Instructions 10 (instructing the jury that "*the inquiry* in deciding whether Mr. Kreinik was an employee or an independent contractor *is the degree of control* exercised by Showbran over the results produced or the means used to achieve the results.") (emphasis added)).

Second, Kreinik's concern that the Court consider factors omitted from the Jury Instructions is, to say the least, perplexing because Kreinik had an opportunity to insist that these factors be included in the Jury Instructions during the charging conference and in his requests to charge. As the Court has noted at length above, ERISA and New York use the *same* common-law test to decide the employee issue, and therefore, if Kreinik truly believed that these factors were relevant to and determinative of his status under the common-law employee test, then he would have included them in his proposed jury instructions (Pl.'s Proposed Jury Instructions 8, July 30, 2004), objected to the Court's draft Jury Instructions at the charging conference, and asked that these factors be added. He did not. These instructions do not appear in his proposed jury instructions, although he listed other factors there. (*Id.*) Although his counsel made two objections to the Court's draft instructions on this issue at the charging conference (Trial Tr. 518-19),[10] his counsel did not object to the omission of any of the factors he argues should be considered by the Court now.[11]

Third, the essential similarity of the Jury Instructions and the common-law test is further underscored by the fact that neither party has propounded *any* significant new evidence that was not submitted to the jury. In fact, much, if not all, of the evidence submitted on this issue is the same evidence advanced at the jury trial, and both parties, especially Kreinik, cite liberally to the

---

[10]At the charging conference, Kreinik's counsel requested that the Court instruct the jury to consider whether "Mr. Kreinik's work for Showbran [was] part of his own business" (Trial Tr. 518), and whether "Mr. Kreinik [was] free to work for others or for himself." (Trial Tr. 519) Counsel for Defendants consented to these requests (Trial Tr. 518-19), and they were adopted by the Court.

[11]The Court notes that Kreinik was required to make timely objections on the record to errors in the Court's instructions to preserve those errors for appellate review. *See* Fed. R. Civ. P. 51 (c), (d).

trial transcript. In considering whether an issue is substantially the same as an issue that has already been adjudicated, the Restatement recommends examining, among other questions, whether "there [is] a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first." Restatement (Second) of Judgments § 27 cmt. c (1982). Here, the arguments and evidence advanced by the parties on the employment issue for Kreinik's ERISA claims do substantially overlap with those presented on the employment issue on his state-law claims, thus further demonstrating that collateral estoppel should apply.

Fourth, notwithstanding the differences in factors submitted to the jury and urged by Kreinik upon the Court now, the Jury Instructions and the test in *Darden* are similar in that they both expressly instruct the factfinder to consider *all* the evidence presented and not to focus exclusively on any one of the enumerated factors. *See Darden*, 503 U.S. at 324 ("[A]ll of the incidents of the relationship must be assessed and weighed with no one factor being decisive."); (Jury Instructions 11 ("You should not consider any one of these factors to be decisive . . . . You must instead consider all the evidence as a whole.")).

Finally, at least one of the factors that Kreinik contends should be considered by the Court (but was not considered by the jury), namely, whether Showbran was in business, "is a factor that will always have very little weight" because it "indicates nothing about whether [a worker] was an employee in that business." *Aymes*, 980 F.2d at 863.

In sum, the Court finds that the jury instructions on this issue are substantially the same as the common-law test applied to ERISA cases. Both focus on the hiring party's right to control the manner and means in which the hired party completes the work and both involve the same evidence and arguments. The Court does not find the exclusion of certain factors, which Kreinik

the manner and means in which the hired party completes the work and both involve the same

evidence and arguments. The Court does not find the exclusion of certain factors, which Kreinik

never requested be included (in either his request to charge or during the charging conference),

from the Jury Instructions to make the instructions significantly different from ERISA's

common-law test.

As a result, the Court finds that the issue of whether Kreinik was Showbran's employee

or independent contractor was already decided by the jury in this case, and therefore, Kreinik

may not recover on his ERISA claims.

## IV. Conclusion

For the reasons stated above, the Court is bound to follow the jury's finding that Kreinik

was an independent contractor, and not an employee, during the time he worked for Showbran.

Accordingly, he is not entitled to recover under his ERISA claims, which are DISMISSED.

Having dismissed Kreinik's federal cause of action, and complete diversity lacking between the

parties, the Court retains supplemental jurisdiction over Kreinik's state-law claims under 28

U.S.C. § 1367(a).


SO ORDERED.

Dated:      November 9, 2005
            New York, New York

                                    KENNETH M. KARAS
                                    UNITED STATES DISTRICT JUDGE

26